Thank you, Your Honor. My name is Randy Tanner, and together with my counsel, Matt Hayhurst, we represent the petitioner in this matter, Mr. David Flores-Vega. And I'd like to reserve three minutes for rebuttal, please. Count down, and when you get to three, that means you've got three left. We'll try to help you. All right. I'll keep an eye on it. The key question in this case is whether Flores-Vega's guilty plea for violating Oregon's strangulation statute is categorically a crime of violence, making him deportable. Can you strangle without force? You absolutely can, Your Honor. And that's the crux of this case, is whether Explain how. I can demonstrate that, Your Honor. The statute Physically. Well, I can demonstrate it for you physically, actually. Yeah, do it on him, okay? We'll see how the argument goes. He might come up here after me on that one. But actually, the Oregon statute just requires pressure to the throat or neck to impede blood flow. That's all it takes. And actually, if I take the tips of my fingers and place them right on my carotid artery like this, that impedes the blood flow. In fact, when a doctor takes your pulse, that's the very purpose of placing their finger there, is to impede the blood flow with enough pressure to where they can feel your blood flow. Is that what happened to your client? No. Actually, there's no facts in the record at all to demonstrate what actually happened in this case. No, he pleaded, right? He pleaded guilty to the very elements of the Oregon statute, which is impeding the blood flow, or placing your fingers on the throat or neck to impede blood flow. So it was Section A of the strangulation statute. Well, we've got a, I'll call it a Duenas-Alvarez problem always, and that is to say we need a realistic possibility. That's how the statute will be interpreted. And one of the ways you see if there's a realistic possibility is you look around at the decided cases, and the best one you've got is the Koehler case. Would you contend that that's not a force within the meaning of what we need to decide? Well, Your Honor, I would back that analysis up just a little bit and say that in United States v. Greisel, this Court held that the realistic probability test does not apply when the language of the statute is clear. That's true. I agree with that, yeah. So in the case that the government cited, Ruiz v. Apollino, the language of consent in that statute wasn't clear, what was actually meant by consent. But here with the Oregon statute, there's no question what pressure means or impeding means, anything like that. So there's no need to apply the realistic probability test. Now turning to Koehler, though, what Koehler involved was a different element of that statute. So that involved placing the hand over the mouth of a person. And here we have, the allegation is that hands were placed on the throat or neck. Now what Koehler does show, though, is that there is a spectrum of conduct that is potentially culpable under the Oregon statute. Yeah, so I take your point about the wording of the statute, but focusing for the moment on Koehler, how would you characterize Koehler with respect to your argument? Does Koehler – under Koehler, do you win the case? Or is Koehler just, oh, you know, what that looks like, it qualifies? Yeah, no, absolutely, Your Honor. We win the case under Koehler. So tell me why. Because what you have in Koehler, you had a situation where you had a certified nursing assistant who was working in a nursing home. And the resident in that case had been known for being combative, being violent, and resisting care. So you have the resident who it's time to have a bath given to that person. The certified nursing assistant comes up. She's trying to manage the resident, and her hand ends up on the mouth of the resident for mere seconds. It ends up for, at least according to what I read in the case, 10 seconds. His eye is bulged. He gets red in the face. The witness says he looked terrified. Right, but that was not – that is not pain capable of causing – or that was not conduct capable of causing physical pain or injury. The apprehension of physical pain is not causing physical pain. So even if there was apprehension or fear that pain was going to be inflicted, the question is, is whether the conduct itself was capable of causing physical pain or injury. And if you have the hands placed over the nose or mouth for a matter of seconds, there was no indication in the record that any physical pain or injury was caused to that person. So here, this is not the first time that this Court has addressed the question of whether a particular crime constitutes a crime of violence. In our briefing, we cited numerous cases where the Court has held that crimes such as battery, DUI, domestic violence, resisting arrest, robbery, shooting at an inhabited dwelling, sexual abuse, stalking, statutory rape, sexual intercourse without consent, felony child abuse – all of those crimes are not categorically a crime of violence. Now it's certainly true that those crimes can be committed in a violent way, but not always. And this statute provides a perfect example of that. If it's possible to violate the statute by mere offensive touching, what the Supreme Court has said is that does not qualify as a crime of violence. The U.S. Supreme Court's decision in Stokeling, which was provided in the 28J letter that the government filed a couple of days ago, that should not lead this Court to reach a different conclusion. What Stokeling said is that Johnson, which is the prevailing law on determining whether a crime constitutes a crime of violence, is still good law. But what Stokeling said is it examined Florida's robbery statute and had as an element of that offense physical confrontation. So as an element of that offense, the state would have to show that the offender used enough force that required the victim to overcome that resistance. You do not have that element in the Oregon statute. The victim can be completely passive with no aggression, no physical confrontation. And frankly, the same is true with the offender by just applying light pressure. And in fact, because it takes such little pressure, such little force to violate the Oregon statute, the statute itself carves out an exception for doctors and dentists for that very reason, so that taking someone's pulse doesn't actually qualify as strangulation. If we get beyond that and you're not successful on that argument, we get to withholding of removal, what's your argument with respect to why the immigration judge didn't do the job that needed to be done? So what happened with respect to withholding of removal was you have to demonstrate in order to find that someone is not eligible for withholding of removal, here Mr. Flores-Vega, the I.J. had to conclude that he had committed a particularly serious crime. But here there was no reasoned explanation for why Mr. Flores-Vega had committed a particularly serious crime. There was no explanation at all. There was a very limited adverse credibility finding which the I.J. essentially said, yeah, I don't believe your story because you're minimizing your conviction. But that's not the analysis, of course. You have to provide a reasoned explanation for why the crime that Mr. Flores-Vega committed was a particularly serious crime. Can we infer from the fact that the immigration judge didn't believe your client that the alternative version of events, which is more potentially violent in nature, is the one that was adopted by the immigration judge? The immigration judge gave no reason to discredit Mr. Flores-Vega's testimony in his account of the events, which was essentially refuting what the government had said was, well, there was an incident of choking. And that's kind of it. There are very limited facts in the records and he disputed those facts. And the immigration judge gave no reason at all for why she discounted those facts. Now, if it is a particularly serious crime, that automatically bars withholding. If it's not, then your client has to get withholding on some other ground. We've got an alternative holding that is to say there's no nexus. How do you deal with that? Your Honor, I think you're correct that if the conclusion is that there is a particularly serious crime, then he's not eligible for withholding removal or cat relief. Right. But, okay, assume for a moment that I agree with you on the particularly serious crime issue. In order to get withholding, he has to show nexus. There's an alternative holding by the BIA that no nexus is shown. How do you respond? I think he has shown a nexus. If what you're referring to is having a reasonable expectation or reasonable fear of returning to Mexico, then he has shown that. Through the State Department country report, there are clearly incidents. But it has to be a reasonable fear of persecution. And persecution is not merely harm. It's harm on account of a protected ground. That is to say you need a nexus to some protected ground. Right. But then also there were not substantial findings on that ground either. And when those findings aren't made, it has to be remanded to make those findings. And, in fact, here too — I guess I have to reread the BIA. I thought that there had been an alternative holding on that. I think there was an alternative holding on that, Your Honor. But I don't think that there was an explanation for why the IJ reached that conclusion. Failure of proof. Doesn't that count? Failure to prove that there is the nexus? Yes. Failure to offer affirmative proof. It is the petitioner's burden, isn't it? It is the petitioner's burden to offer that. And Mr. Flores Vega did offer that proof. But there was no — Proof of nexus? Yes, Your Honor. Proof — And that was in a sentence? I'm sorry? That was — I'm asking you to supply the sentence. I do not have a reference to that right on the tips of my finger, Your Honor. I can look at that. I think you misunderstood the question. He's not asking — Judge Hawkins, I think, is not asking for a quotation. He wants you to give us a sentence. What is the nexus? Where's the beef? The beef is that there was a sufficient nexus showing that he had a reasonable fear of persecution returning back to Mexico, and that he feared returning because of the demonstrated violence in Mexico that was evidenced in the State Department report. But you're not there yet. Merely showing fear of violence, even legitimate fear of violence, is not enough. It has to be violence inflicted upon him for some protected — on some protected ground. And against him — So what's the protected ground? And against him personally, I'm not aware of that in the record. I don't think that there was evidence of that in the record. Well, there's a problem, because — just harm by itself. It's got to be because of political disagreement, religious prejudice, family group. I mean, you got to have something. And I agree with that, Your Honor. And I don't think that there was an individualized showing with respect to him personally having experienced that. But what I will say is that we don't really even need to get to that question, because he wasn't deportable in the first place, because the Oregon strangulation statute is not a crime of violence. Now, we've taken you over. Let's hear from the other side, but we'll give you a chance to respond. Okay. Thank you. Good morning. May it please the Court, I'm Matthew Glover, and I represent Respondent the Attorney General. Judge Hawkins, it's not possible to violate the Oregon strangulation statute without the application of force. We believe the Dwingers, Alvarez — Violent force? Force, yes. Violent, by definition, capable of inflicting pain or injury. I agree with your side of the argument with respect to Kaler. But the statute is really broad. I'll just read it. A person commits the crime of strangulation if the person knowingly impedes the normal breathing or circulation of the breath of another person by applying pressure on the throat, neck, or chest of the other person. Okay, I do that. I've impeded it. I mean, I'm just echoing the argument I just heard. And you say, well, the doctor does that. That can't be a crime. Well, that's exactly why the statute then says, well, if the doctor does it, it's not a crime, which suggests that if I do it to somebody, it is a crime. So how do you respond? I guess I would respond, Your Honor, that it's not clear from the face of the statute. Impeding is to slow or delay. We don't know whether that's any amount of slowing or delaying, but it needs to affect your normal breathing and your normal circulation. Is it delaying a breath by some period of time? We would look at organ courts. My friend has cited only Kaler. I looked at the citing references for this statute in Westlaw and could not find an organ case setting that outer bounds. So I don't think that the statute clearly covers minimal pressure on your carotid artery. But when you are putting pressure on the carotid artery so as to cut off circulation, there's certainly capability. Well, here's my problem. Impede is not the same thing as cutting off. So impede normal circulation. I think if you are taking somebody's blood pressure, it's very slight. I get that. But that's the problem. You're impeding the, I mean, that's why it registers on the bump on the blood pressure machine. Understood, Your Honor. Again, I have found no case in which organ has applied it to such a minimal impediment. I agree that impede, you know, is to slow or delay. But here, Kaler, as I believe, you know, exchanged with my friend on the other side, Kaler did involve covering the mouth. His eyes did turn red. And as the Seventh Circuit found in Mancias, covering the mouth or nose or pushing on the throat or neck or chest so as to impede your capable of causing harm, that's why you wouldn't block. Well, I'm with you on Kaler. I'm just, I'm focusing on the words of the statute, which is the other argument he has. I understand. And again, I think that you don't need significant pressure. This is where the Supreme Court Stoeckling opinion is helpful in illuminating what the Johnson test was. After Johnson in Castleman, Justice Scalia had said he believed Johnson's capability test covered things like hitting, slapping, shoving, grabbing, pinching, biting, or hair pulling. Now, he didn't say hair pulling is pulling one hair or pulling many hairs. And obviously under Reiter v. Sonotone, you wouldn't read his opinion the same way you'd read a statute. But the Supreme Court in Stoeckling said all of those things Justice Scalia had said in his concurrence constituted a crime of violence under Johnson do constitute a crime of violence under Johnson. And if you look at the crime at issue in Stoeckling, one of the examples the Court gave was a Florida case in which a person had put bills in one hand, they'd moved them to the other hand while searching for change, and someone pulled back their fingers and took the bills. That's not a lot of force. That's not a lot of physical contact. But that was sufficient to be capable of causing injury. Here, again, the minimal force and contact the statute might require is, we believe, sufficient to be capable of causing injury. The word you didn't say in that litany was cover. And you can violate the statute by covering. Yes, you can violate 1B by covering. And I think the briefs might talk past one another on this point. We've briefed the case as, you know, a violation of all of 1, both A and B, is a crime of violence. My friend, at least in his reply brief, focuses on how 1A is not divisible. So if the Court was uncomfortable with whether or not B is — constitutes a crime of violence, it could focus, as my friend did, on 1A. I would, again, say on the covering prong, Kyler, I think, sets the outer limit. The one thing I would note about Kyler is the strangulation conviction was not appealed there. So while we do have the facts that Judge Fletcher discussed with my friend turning red in the face, a gentleman who didn't normally open his eyes opened his eyes, the Court wasn't required to sort of flesh out all of the elements and everything required for strangulation because that issue was not on appeal there. I'm happy to talk about the withholding or the removal and the alternative holdings. Otherwise, I'm happy to rest on our briefs with just one slight note. In his reply, my friend raised Moldano, a more recent case from this circuit, which is at 786 F. 3rd, 1155. And at 1164, it establishes that in a CAT claim, this circuit does not put a burden on the petitioner to show that he could not have relocated somewhere else in the country, whereas in asylum, you do have that requirement. But on page 1164, the Court is clear. The reason is that the pertinent regulation, 8 CFR 1208.16, says that on CAT claims, the I.J. and the BIA must consider all of the evidence. And so that doesn't place an additional burden about relocation on the petitioner. But in that same paragraph, the Court said it also doesn't place a burden on the government. So there will be no need to remand here, because the I.J. and the BIA didn't say, you didn't show you were not able to relocate. They said, I find that you could relocate. So if the Court has no further questions, I'm happy to rest on our briefs. Well, let me just ask you this one, because you've mentioned on withholding of removal. Do you think the record just focusing on what the immigration judge, the analysis the immigration judge provided, is it adequate? Is adequate analysis of the Frentescue, if I'm pronouncing it correctly, factors? I mean, there really isn't anything in the analysis other than the fact that the I.J. didn't believe Mr. Vega, and then no real analysis of the crime, because we don't have police reports or the like. So is it really adequate? Yes, Your Honor. The first point I would make is Frentescue's factors say first you look at the elements of the crime, and then in re matter of NAM, the BIA said the elements alone can be sufficient. Here the I.J. looked at the elements of the crime. The next step then is looking at all reliable evidence. When the I.J. made a determination that Petitioner was not credible as to his denial of the crime or his events of the crime, that's no longer reliable evidence to look at. And then she did look at the, you know, charging document and the plea. And as my friend stated, it says, you know, he pled guilty to the elements of Section 1. It did add, I think, the victim's name. She was an ex-girlfriend. So it adds some of that. But again, under matter of NAM, the I.J. could have stopped and the BIA adopted this just with the elements. But she did continue with additional analysis. And actually, if I could make one more point on nexus. The I.J. did point out that there was no showing that evangelical Christians, which is one of the grounds that my, that Petitioner relied on, were persecuted throughout Mexico. She also noted that there was no showing that the indigenous people from the region that Petitioner was from were going to be persecuted throughout Mexico or with the assent of the government. So there was nexus findings. I'm not sure she used the term nexus, but she applied that analysis. So, thank you. Would you please put two minutes on the clock? Thank you, Your Honor. I'll just make two very quick points. The first one to address the Seventh Circuit's decision in Mancius. In that case and then in the cases that Mancius discusses, the critical error in those decisions is that they failed to apply the least egregious conduct analysis. And this Court has faced that scenario before where it has looked to other circuits, how they've treated particular crimes of violence. The Walton decision that we provided in our 28J is an example of that and have noted that when other circuits fail to apply the appropriate Johnson analysis, then it's not persuasive authority. So what the Seventh Circuit did in Mancius was it looked to the strangulation statute and concluded, yeah, generally speaking, it's possible to violate this statute in a violent way. But notably, the Court did not identify the least egregious conduct. There's no identification of the least egregious conduct and a corresponding conclusion that that least egregious conduct would actually be violent conduct. So there is no reason for this Court to conclude that strangulation is a crime of violence on account of Mancius. The second point that I wanted to just quickly make, too, on the realistic probability argument, just to provide that citation to Greisel that I had referred to, that's at 488 F. 3rd. 844. That's the Ninth Circuit en banc decision from 2007. You're clearly right on the law that you don't need a case if the language can reasonably bear that, and we think that that means—no, I take the point. Okay. In the absence of State cases—so even if Kaler's not squarely on point, the absence of State cases is no reason to conclude that the strangulation statute can be violated in a violent way. All the Court has to do, based on Greisel, is look to the plain language of the statute. And that's all I have, Your Honor. Thank you very much. Thank both sides for the arguments. And before you quit, you're doing this pro bono, is that right? That's correct, Your Honor. On behalf of the Court, I'd like to thank you for doing this pro bono. You do an excellent job, and as a group, the pro bono people do an excellent job, and it's enormously helpful to us, and we thank you. That doesn't mean you're going to win. You may or may not. And I'm only thanking—not thanking you in the same way, because you're getting paid. Thank you. We appreciate the opportunity, Your Honor. Thank you. Flores-Vega v. Barr, submitted.
judges: Hawkins, W. Fletcher, Seeborg